Guido Saveri (#22349)
R. Alexander Saveri (#173102)
Cadio Zirpoli (#179108)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA  94111
Telephone: (415) 217-6810
guido@saveri.com
rick@saveri.com
cadio@saveri.com

Anthony D. Shapiro
George W. Sampson
Ronnie S. Spiegel
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
tony@hbsslaw.com
george@hbsslaw.com
ronnie@hbsslaw.com

Fred Taylor Isquith
WOLF, HALDENSTEIN, ADLER,
    FREEMAN & HERZ
270 Madison Avenue
New York, NY  10016
Telephone: (212) 545-4600
isquith@whafh.com

Counsel for Plaintiffs

FILED

JAN 2 5 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

CV 10 0346 EDL

| | |
|---|---|
| Alan Preis on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>vs.<br><br>Hitachi, Ltd., Mitsubishi Electric Corporation, Mitsubishi Electric and Electronics USA, Inc., Toshiba Corporation and Toshiba America Electronic Components, Inc.,<br><br>            Defendants. | CIVIL ACTION NO.<br><br>**CLASS ACTION**<br><br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

1

**I.     NATURE OF THE ACTION**

2        1.     This action is brought as a class action on behalf of a plaintiff class (the "Class")

3    consisting of all persons and entities in the United States who purchased Dynamic Random Access

4    Memory chips or modules ("DRAM") directly from the named defendants or their co-conspirators

5    during the period from approximately April 1, 1999 through at least June 30, 2002 (the "Class

6    Period").

7        2.     Defendants and their co-conspirators were some of the leading manufacturers of

8    semiconductor memory products, including DRAM, and control the majority of the memory chip

9    industry, which annually generated worldwide revenues in excess of $20 billion. Defendants,

10   however, are no longer in the DRAM business. Plaintiffs allege that during the Class Period,

11   defendants conspired, combined and contracted to fix, raise, maintain, and stabilize the prices at

12   which DRAM was sold in the United States. As a result of defendants' unlawful conduct, plaintiffs

13   and the other members of the Class paid artificially inflated prices for DRAM during the Class

14   Period. Such prices exceeded the amount they would have paid if the price for DRAM had been

15   determined by a competitive market.

16

**II.     JURISDICTION AND VENUE**

17       3.     Plaintiff brings this action under §§ 4 and 12 of the Clayton Act (15 U.S.C. §§ 15

18   and 22) for treble damages, as well as reasonable attorneys' fees and costs with respect to the

19   injuries sustained by plaintiff arising from violations by defendants of the federal antitrust laws,

20   including § 1 of the Sherman Antitrust Act (15 U.S.C. § 1).

21       4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a)

22   and 1367.

23       5.     Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15 and 22, and 28

24   U.S.C. § 1391(b) and (c), in that at least one of the defendants resides in this judicial district, is

25   licensed to do business or is doing business in this judicial district.

26

**III.     TOLLING AGREEMENTS**

27       6.     On June 15, 2006, a tolling agreement was entered into between co-lead counsel for

28   the direct purchaser plaintiffs in *In Re Dynamic Random Access Memory (DRAM) Antitrust*

CLASS ACTION COMPLAINT                1

1  *Litigation*, MDL No. 1486, and each of the named Defendants. Since that time, the plaintiff has

2  investigated the claims alleged in this complaint and has reached a settlement with each of the

3  named Defendants. The settlements will be presented to the Court as soon as practical after the

4  case is assigned to a Department in the Court for the Northern District of California.

**IV.    PARTIES**

5

**A.    Plaintiff**

6

7        7.      Plaintiff Alan Preis is a California resident. During the Class Period, Alan Preis

8  purchased DRAM from one of the Defendants or their Co-Conspirators.

9  **B.    Defendants**

10       8.      Defendant Hitachi, Ltd. is a business entity organized under the laws of Japan, with

11 its principal place of business at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo, Japan 100-8280.

12 Hitachi Ltd. manufactured, sold, and distributed DRAM until December 31, 2000 when it exited

13 the DRAM business.

14       9.      Defendant Hitachi Ltd. is referred to herein as "Hitachi."

15       10.     Defendant Mitsubishi Electric Corporation ("MEC") is a business entity organized

16 under the laws of Japan, with its principal place of business at Tokyo Building, 2-7-3, Marunouchi,

17 Chiyoda-ku, Tokyo 100-8310, Japan. During the Class Period, MEC manufactured, sold, and

18 distributed DRAM until March 31, 2003 when it exited the DRAM business.

19       11.     Defendant Mitsubishi Electric and Electronics USA, Inc. ("MEUS") is a wholly

20 owned and controlled subsidiary of MEC, with its principal place of business at 5665 Plaza Drive,

21 Cypress, California. During the Class Period, MEUS manufactured, sold, and distributed DRAM

22 until March 31, 2003 when it exited the DRAM business.

23       12.     Defendants MEC and MEUS, are collectively referred to herein as "Mitsubishi."

24       13.     Defendant Toshiba Corporation is a business entity organized under the laws of

25 Japan, with its principal place of business at 1-1 Shibaura, 1-chrome Minato-ku, Tokyo 105-8001,

26 Japan. During the Class Period, Toshiba Corporation manufactured, sold, and distributed DRAM

27 until April 2002, when it exited the DRAM business.

28

CLASS ACTION COMPLAINT            2

14.     Defendant Toshiba America Electronic Components, Inc. ("TAEC") is a wholly owned and controlled subsidiary of Toshiba Corporation with its principal place of business at 19900 MacArthur Blvd., Suite 400, Irvine, California.  During the Class Period, TAEC manufactured, sold, and distributed DRAM in the United States until April 2002, when it exited the DRAM business.

15.     Defendants Toshiba Corporation and TAEC are referred to collectively herein as "Toshiba."

**B.     Co-Conspirators**

16.     Co-Conspirator Micron Technology, Inc. is a Delaware corporation with its principal place of business at 8000 South Federal Way, Boise, Idaho.  During the Class Period, Micron Technology, Inc. designed, developed, manufactured, sold and distributed DRAM throughout the United States.  DRAM is Micron's primary semiconductor product.

17.     Co-Conspirator Micron Semiconductor Products, Inc. is an Idaho corporation located at 8000 South Federal Way, Boise, Idaho and is a wholly owned and controlled subsidiary of defendant Micron Technology, Inc.  During the Class Period, Micron Semiconductor Products, Inc. sold DRAM through its Crucial Technology, Inc. retail sales division to computer manufacturers and other end users throughout the United States.

18.     Co-Conspirator Crucial Technology, Inc. ("Crucial") is a division of Micron Technology, Inc. with its principal place of business in Boise.  Crucial operates the distribution business of Micron Technologies, Inc.

19.     Micron Technology, Inc., Micron Semiconductor Products, Inc., and Crucial are collectively referred to herein as "Micron."

20.     Co-Conspirator Infineon Technologies AG ("Infineon AG"), a German corporation, maintains its headquarters at St. Martin-Str. 53, 81669, Munich, Germany.  During the Class Period, Infineon AG manufactured, sold, and distributed DRAM throughout the world, including the United States.

21.     Co-Conspirator Infineon Technologies North America Corp. ("Infineon NA") is a Delaware corporation, which maintains offices at 1730 North First Street, San Jose, California

CLASS ACTION COMPLAINT                              3

95112. Infineon NA is a wholly owned and controlled subsidiary of Infineon AG (collectively.

During the Class Period, Infineon NA sold and distributed DRAM throughout the United States.

22.     Infineon AG and Infineon NA are collectively referred to herein as "Infineon."

23.     Co-Conspirator Hynix Semiconductor, Inc. maintains its head offices at SAN 136-1, Ami-Ri Bubal-eub, Ichon-si, Kyoungki-do, Korea. During the Class Period, Hynix Semiconductor, Inc. manufactured, sold and distributed DRAM throughout the world, including the United States.

24.     Co-Conspirator Hynix Semiconductor America, Inc. ("Hynix America") is a California corporation located at 3101 North First Street, San Jose, California 95134. Hynix America is a wholly owned and controlled subsidiary of Hynix Semiconductor, Inc. During the Class Period, Hynix America sold and distributed DRAM throughout the United States.

25.     Hynix America and Hynix Semiconductor, Inc. are collectively referred to herein as "Hynix."

26.     Co-Conspirator Samsung Electronics Co., Ltd. ("SEC"), a Korean corporation, maintains its executive offices at Samsung Main Building, 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea. During the Class Period, SEC manufactured, sold and distributed DRAM throughout the world, including the United States.

27.     Co-Conspirator Samsung Semiconductor, Inc. ("SSI") is a California corporation located at 3655 North First Street, San Jose, California 95134. SSI is a wholly owned and controlled subsidiary of SEC. During the Class Period, SSI sold and distributed DRAM throughout the United States.

28.     SEC and SSI are collectively referred to herein as "Samsung."

29.     Co-Conspirator Mosel-Vitelic Corporation ("MVC") is a Taiwanese corporation and maintains its headquarters at No. 19 Li Hsin Road, Hsinchu Science Based Industrial Park, Hsinchu, Taiwan, R.O.C. During the Class Period, MVC sold and distributed DRAM throughout the world, including the United States.

30.     Co-Conspirator Mosel-Vitelic Corporation (USA) ("MVC USA") is a California corporation located at 3910 North First Street, San Jose, California 95134. MVC USA is a wholly

CLASS ACTION COMPLAINT                    4

1    owned and controlled subsidiary of MVC. During the Class Period, MVC USA sold and

2    distributed DRAM throughout the United States.

3        31.    MVC and MVC USA are collectively referred to herein as "Mosel-Vitelic."

4        32.    Co-Conspirator Nanya Technology Corporation ("NTC") is a Taiwanese

5    corporation which maintains its headquarters at HWA YA Technology Park, 669, Fu Hsing 3rd Rd.

6    Keuishan, Taoyuan, Taiwan, R.O.C. During the Class Period, NTC sold and distributed DRAM

7    throughout the world, including the United States.

8        33.    Co-Conspirator Nanya Technology Corporation USA ("Nanya USA") is a

9    California corporation located at 675 E. Brokaw Road, San Jose, California 95112. Nanya USA is

10   a branch office of NTC. In addition to the sales and marketing office in San Jose, California, NTC

11   operates memory design centers in San Jose, California and Houston, Texas. During the Class

12   Period, Nanya USA sold and distributed DRAM throughout the United States.

13       34.    NTC and Nanya USA are collectively referred to herein as "Nanya."

14       35.    Co-Conspirator Winbond Electronics Corporation ("WEC"), is a Taiwanese

15   corporation headquartered at 4 Creaton Road, 111, Science-Based Industrial Park, Hsinchu,

16   Taiwan, R.O.C. During the Class Period, WEC manufactured, sold and distributed DRAM

17   throughout the world, including the United States.

18       36.    Co-Conspirator Winbond Electronics Corporation America ("WEC America"),

19   located at 2727 North First Street, San Jose, California 95134, is a wholly owned subsidiary of

20   WEC. During the Class Period, WEC America sold and distributed DRAM throughout the United

21   States.

22       37.    WEC and WEC America are collectively referred to herein as "Winbond."

23       38.    Co-Conspirator Elpida Memory, Inc. ("EMI") is a Japanese corporation and

24   maintains its executive offices at Sumitomo Seimei Yaesu Bldg., 3F, 2-1 Yaseu 2-chome, Chuo-ku,

25   Tokyo, Japan. During the Class Period, Elpida Memory, Inc. manufactured, sold and distributed

26   DRAM throughout the United States.

27

28

CLASS ACTION COMPLAINT                5

1    39.    Co-Conspirator Elpida Memory (USA) Inc. ("Elpida USA"), located at 2001 Walsh

2    Avenue, Santa Clara, CA 95050, is a wholly owned subsidiary of EMI, which sold and distributed

3    DRAM throughout the United States during the Class Period.

4    40.    EMI and Elpida USA are collectively referred to herein as "Elpida."

5    41.    Co-Conspirator NEC Electronics America, Inc. ("NEC America") is a California

6    corporation and maintains its corporate headquarters at 2880 Scott Boulevard, Santa Clara,

7    California 95050-2554 and its manufacturing plant in Roseville, California. It is a wholly owned

8    subsidiary of NEC Electronics Corporation ("NEC"). During the Class Period, NEC America

9    manufactured, sold and distributed DRAM throughout the United States.

10    42.    NEC and NEC America are collectively referred to herein as "NEC."

11    43.    The acts charged in this complaint have been done by defendants or were ordered or

12    done by defendants' officers, agents, employees, or representatives while actively engaged in the

13    management of defendants' affairs.

14                    **V.    CLASS ACTION ALLEGATIONS**

15    44.    Plaintiff brings this action both on behalf of himself, and as a class action pursuant

16    to Federal Rules of Civil Procedure, Rule 23(a) and (b)(3), on behalf of the following classes:

17    45.    As to defendants Hitachi and Mitsubishi:

18           All individuals and entities who, during the period from
             approximately April 1, 1999 through at least June 30, 2002 (the
19           "Class Period"), purchased DRAM in the United States directly from
             the defendants, their subsidiaries or their co-conspirators. Excluded
20           from the Class are defendants and their parents, subsidiaries,
             affiliates, all governmental entities, and co-conspirators.

21    46.    As to defendant Toshiba:

22
             All individuals and entities who, during the period from
23           approximately April 1, 1999 through at least June 30, 2002 (the
             "Class Period"), purchased DRAM in the United States directly from
24           the defendants, their subsidiaries or their co-conspirators, and who
             did not by October 3, 2006 request exclusion from the Class certified
25           in the Court's June 5, 2006 Order, settle or release their claims,
             and/or whose claim(s) are not otherwise precluded. Excluded from
26           the class are defendants and their parents, subsidiaries, affiliates, all
             governmental entities, and co-conspirators.

27    47.    The classes are collectively referred to herein as the "Class."

28

CLASS ACTION COMPLAINT                6

1  48.  Defendants have agreed to settle the claims of the classes defined above.

2  49.  The number of class members is in the thousands and class members are
3  geographically dispersed throughout the United States such that joinder of all class members is
4  impracticable.

5  50.  Plaintiff's claims are typical of the claims of the Class in that plaintiff is a direct
6  purchaser of DRAM, all class members were damaged by the same wrongful conduct of
7  defendants and their co-conspirators as alleged herein, and the relief sought is common to the
8  Class.

9  51.  Numerous questions of law or fact arise from defendants' anticompetitive conduct
10  that are common to the Class. Among the questions of law or fact common to the Class are:

11  a.  whether defendants engaged in a contract, combination or conspiracy among
12  themselves to fix, maintain or stabilize the prices of, or allocate the market for, DRAM sold in the
13  United States;

14  b.  whether the conduct of defendants caused prices of DRAM to be artificially
15  inflated to non-competitive levels; and

16  c.  whether plaintiff and other members of the Class were injured by the
17  conduct of defendants and, if so, the appropriate class-wide measure of damages and appropriate
18  injunctive relief.

19  52.  These questions of law or fact are common to the Class, and predominate over any
20  other questions affecting only individual class members.

21  53.  Plaintiff will fairly and adequately represent the interests of the Class in that
22  plaintiff is a typical direct purchaser of DRAM and has no conflicts with any other member of the
23  Class. Furthermore, plaintiff has retained competent counsel experienced in antitrust and class
24  action litigation.

25  54.  A class action is superior to the alternatives, if any, for the fair and efficient
26  adjudication of this controversy.

27

28

CLASS ACTION COMPLAINT  7

1    55.    Prosecution of separate actions by individual class members would create the risk of

2    inconsistent or varying adjudications, establishing incompatible standards of conduct for the

3    defendants.

4                              **VI.    TRADE AND COMMERCE**

5    56.    During at least part of the Class Period, defendants an/or their subsidiaries sold and

6    shipped substantial quantities of DRAM in a continuous and uninterrupted flow of interstate and

7    international commerce to customers located in states other than the states in which defendants are

8    located.

9    57.    The business activities of defendants that are the subject of this complaint were

10   within the flow of, and substantially affected, interstate trade and commerce.

11   58.    During the Class Period, defendants and their co-conspirators, including those who

12   are the largest DRAM producers in the world, have most of the DRAM sales in the global market.

13                             **VII.    STATEMENT OF FACTS**

14   59.    DRAM is a high density, low-cost-per bit, random access memory component that

15   stores digital information and provides high-speed storage and retrieval of data used in personal

16   computers, printers, digital cameras, wireless telephones, and other electronic devices as a storage

17   module to hold data as it is processed. DRAM is the most common kind of random access memory

18   chip sold both in new computers and computer upgrades in the United States. DRAM is sold in

19   individual chips or modules with several chips attached to the module.

20   60.    In view of the economic conditions of the industry, the defendants and their co-

21   conspirators entered into conspiratorial agreements designed to combat the price decline in the

22   industry. These agreements had the effect both of artificially limiting the rate of DRAM price

23   declines, and, at other times, of artificially increasing DRAM prices.

24   61.    A number of the defendants and co-conspirators were the subjects – and targets – of

25   the Department of Justice's ("DOJ") antitrust investigation into the DRAM cartel.

26   62.    On June 18, 2002, Micron announced that it had been cooperating with the DOJ's

27   DRAM investigation, pursuant to the DOJ's amnesty program. As the amnesty applicant, Micron

28   was immune from criminal fines for its participation in the DRAM conspiracy.

CLASS ACTION COMPLAINT                          8

1    63.    On May 11, 2005, Hynix Semiconductor, Inc. pled guilty to participating in a

2    conspiracy to suppress and eliminate competition by fixing the prices of DRAM.

3    64.    On November 30, 2005, Samsung ElectronicsCompany and Samsung

4    Semiconductor, Inc. pled guilty to participating in a conspiracy to suppress and eliminate

5    competition by fixing the prices of DRAM.

6    65.    In October 2004, Infineon Technology A.G. pled guilty to participating in a

7    conspiracy to suppress and eliminate competition by fixing the prices of DRAM.

8    66.    On March 22, 2006, Elpida pled guilty to participating in a conspiracy to suppress

9    and eliminate competition by fixing the prices of DRAM.

10                                **VIII.  VIOLATIONS ALLEGED**

11    67.    Plaintiff incorporates by reference as if fully set forth, the preceding allegations of

12    this complaint.

13    68.    Beginning on or about April 1, 1999, the exact date being unknown to plaintiff,

14    defendants and their co-conspirators, by and through their officers, directors, employees, agents, or

15    other representatives, entered into a continuing contract, combination or conspiracy to

16    unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C.

17    § 1.

18    69.    Defendants, by their unlawful conspiracy, artificially raised, inflated and maintained

19    the market price of DRAM as herein alleged.

20    70.    The contract, combination or conspiracy consisted of a continuing agreement,

21    understanding and concert of action among defendants and their co-conspirators, the substantial

22    terms of which were to fix, raise, maintain and stabilize the prices of and/or allocate the market for

23    DRAM they sold in the United States.

24    71.    Upon information and belief, for the purpose of formulating and effectuating their

25    contract, combination or conspiracy, defendants and their co-conspirators did those things they

26    contracted, combined or conspired to do, including:

27            a.    participating in meetings and conversations to discuss the prices of and/or

28    allocate the market for DRAM;

CLASS ACTION COMPLAINT                         9

1          b.      agreeing to manipulate prices and supply so as to boost sagging DRAM sales

2   in a manner that deprived direct purchasers of free and open competition;

3          c.      issuing price announcements and price quotations in accordance with the

4   agreements reached; and

5          d.      selling DRAM to customers in the United States at non-competitive prices.

6      72.      As a direct result of the unlawful conduct of defendants and their co-conspirators in

7   furtherance of their continuing contract, combination or conspiracy, plaintiff and other members of

8   the class have been injured in their business and property in that they paid more for DRAM than

9   they would have paid in the absence of defendants' price fixing.

10                                  **IX.      EFFECTS**

11     73.      The above combination and conspiracy has had the following effects, among others:

12         a.      price competition in the sale of DRAM by defendants and their

13   co-conspirators has been restrained, suppressed and eliminated throughout the United States;

14         b.      prices for DRAM sold by defendants have been raised, fixed, maintained

15   and stabilized at artificially high and noncompetitive levels throughout the United States; and

16         c.      direct purchasers of DRAM from defendants have been deprived of the

17   benefit of free and open competition in the purchase of DRAM.

18     74.      As a direct and proximate result of the unlawful conduct of defendants, plaintiff and

19   other members of the class have been injured in their business and property in that they paid more

20   for DRAM than they otherwise would have paid in the absence of the unlawful conduct of

21   defendants.

22                          **X.      FRAUDULENT CONCEALMENT**

23     75.      Plaintiff had no knowledge of the combination and conspiracy alleged herein, or of

24   any facts that might have led to the discovery thereof in the exercise of reasonable diligence, prior

25   to June, 2002, when defendants Micron, Samsung, Hynix and Infineon announced that the DOJ

26   was investigating the DRAM industry.

27     76.      Plaintiff could not have discovered the existence of the combination and conspiracy

28   alleged herein at an earlier date by the exercise of reasonable due diligence because of the

CLASS ACTION COMPLAINT                    10

1  deceptive practices and techniques of secrecy employed by the defendants and their co-conspirators

2  to avoid detection and affirmatively conceal such violations.

3      77.    As a result of the fraudulent concealment of the conspiracy, plaintiff asserts the

4  tolling of the applicable statute of limitations affecting the causes of action by plaintiffs and the

5  members of the Class.

6                           **XI.    DAMAGES**

7      78.    During the Class Period, plaintiff and the other members of the Class purchased

8  DRAM directly from defendants, or their subsidiaries, agents, and/or affiliates, and, by reason of

9  the antitrust violations herein alleged, paid more for such products than they would have paid in the

10  absence of such antitrust violations. As a result, plaintiff and the other members of the Class have

11  sustained damages to their business and property in an amount to be determined at trial.

12                          **PRAYER FOR RELIEF**

13      WHEREFORE, plaintiff demands judgment against defendants as follows:

14      A.    A declaration that this action is a proper class action under Federal Rules of Civil

15  Procedure, Rule 23(b)(3) on behalf of the class as defined herein, and an Order directing that

16  reasonable notice of this action, as provided by Federal Rules of Civil Procedure, Rule 23(c)(2), be

17  given to each member of the class;

18      B.    A declaration that the unlawful combination and conspiracy alleged herein is an

19  unreasonable restraint of trade of commerce in violation of Section 1 of the Sherman Act, 15

20  U.S.C. § 1;

21      C.    An award to plaintiff and each member of the Class damages, as provided by law,

22  and joint and several judgments in favor of plaintiff and each member of the Class against

23  defendants, and each of them, in an amount to be trebled in accordance with the antitrust laws;

24      D.    An award to plaintiff and the Class for the costs of this suit (including expert fees),

25  and reasonable attorneys' fees, as provided by law; and

26      E.    An award for such other and further relief as the nature of this case may require or

27  as this court deems just, equitable and proper.

28

CLASS ACTION COMPLAINT          11

1 | **JURY DEMAND**

2 |     Plaintiff demands a jury trial, pursuant to Federal Rules of Civil Procedure, Rule 38(b), of

3 | all triable issues.

4 | Dated: January 25, 2010

5

6

7 | Guido Saveri
| R. Alexander Saveri
| Cadio Zirpoli
8 | SAVERI & SAVERI, INC.
| 706 Sansome Street
9 | San Francisco, CA 94111
| Telephone: (415) 217-6810
10 | Facsimile: (415) 217-6813

11 | Anthony D. Shapiro
| George W. Sampson
12 | Ronnie S. Spiegel
| HAGENS BERMAN SOBOL SHAPIRO LLP
13 | 1301 Fifth Avenue, Suite 2900
| Seattle, WA 98101
14 | Telephone: (206) 623-7292
| Facsimile: (206) 623-0594

15

16 | Fred Taylor Isquith
| WOLF, HALDENSTEIN, ADLER,
|    FREEMAN & HERZ
17 | 270 Madison Avenue
| New York, NY 10016
18 | Telephone: (212) 545-4600
| Facsimile: (212) 545-4653

19

20 | *Counsel for Plaintiffs*

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT      12